UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER H. CROWDER, | : | |
| Plaintiff, | : | CASE NO. 3:17-cv-1135 (VAB) |
| | : | |
| v. | : | |
| | : | |
| DR. FARINELLA, et al., | : | |
| Defendants. | : | AUGUST 7, 2017 |
| | : | |

**INITIAL REVIEW ORDER**

Christopher H. Crowder ("Plaintiff"), currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this Complaint *pro se* under 42 U.S.C. § 1983. The Court received Mr. Crowder's Complaint on July 10, 2017 and granted his motion to proceed *in forma pauperis* on July 18, 2017. The Complaint sets forth various allegations against Dr. Farinella, Dr. Freston, Dr. Naqvi, Dr. Ruiz, Health Services Administrator Raquel Lightner, FOI Liaison Correctional Counselor Moore, Nurse Supervisor Heidi Greene, and Recreation Supervisor Rudi Alvarez (together "Defendants"). Mr. Crowder alleges that all Defendants have been deliberately indifferent to his medical needs.

**I. STANDARD OF REVIEW**

Under Section 1915A of Title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). When reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.

2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II. FACTUAL ALLEGATIONS

### A. Provision of Medical Care

The Complaint states that Mr. Crowder suffers from multiple sclerosis ("MS"). In April 2013, Mr. Crowder allegedly submitted a medical request because he was experiencing difficulty breathing. A nurse allegedly checked his lungs in the housing unit. He claims that, although his lungs sounded clear, the nurse stated that she would put him on the list to see a doctor. Compl., ECF No. 1 at 12, ¶ 18. However, Mr. Crowder was allegedly not called to see a doctor.

In May 2013, he claims that he submitted two additional medical requests complaining of tightness in his chest. Mr. Crowder was allegedly called to the medical unit and examined by a male nurse. The nurse allegedly listened to his chest and stated that his lungs sounded clear. *Id.* at ¶ 19.

In September 2014, Mr. Crowder states that he saw Dr. O'Halloran. After listening to

Mr. Crowder's chest, Dr. O'Halloran allegedly stated that he could not understand why it took the nursing staff so long to schedule a doctor exam. Dr. O'Halloran allegedly ran tests, submitted paperwork for lab work and gave Mr. Crowder an inhaler to try for a month. *Id.* at 12-13, ¶ 20. Mr. Crowder claims that he returned to see Dr. O'Halloran in November 2014 and reported that the inhaler was ineffective. According to Mr. Crowder, his chest would hurt when it tightened up or when he sneezed. *Id.* at 13, ¶ 21.

At the November visit, Dr. O'Halloran allegedly submitted a request to the Utilization Review Committee ("URC") for examination by a pulmonologist. The request was allegedly denied. *Id.* at ¶¶ 22-23. In December 2014, Mr. Crowder claims that he wrote to Defendant Lightner and to Ms. Castro, the Director of Medical Quality and Resource Management, complaining about the issues with his breathing and the URC denial. *Id.* at ¶¶ 24-25. In February 2015, Defendant Lightner allegedly responded to Mr. Crowder's letter and stated that there were no entries in his medical records showing that he had been seen by any medical staff. *Id*. at ¶ 26.

On April 8, 2015, Mr. Crowder states that he had an x-ray of his lungs. He was allegedly never told the results. *Id*. at ¶ 28. Mr. Crowder claims that, on April 25, 2015, Defendant Lightner again told him that his file contained no references to breathing issues or URC requests. *Id.* at 14, ¶ 31. The following day, Mr. Crowder claims that he wrote to Ms. Castro again questioning why he had received blood tests, x-rays and inhalers if he had no breathing issues. *Id.* at ¶32.

On May 17, 2016, Mr. Crowder allegedly met with Dr. Pillai, who was taking over for Dr. O'Halloran. After Mr. Crowder explained his breathing issues, Dr. Pillai allegedly stated

3

that the breathing issues might be caused by age. *Id*. at ¶ 33. On June 1, 2015, he claims that he underwent an EKG and was told his heart seemed fine. *Id.* at ¶ 29.

In July 2015, a nurse allegedly checked Mr. Crowder's medical file and told him that the URC request was there and marked received. *Id.* at ¶ 30. On August 19, 2016, Dr. Pillai allegedly told Mr. Crowder that the URC denied the request. *Id.* at ¶ 34. In December 2016, Mr. Crowder filed a medical habeas action in state court. *Id.* at 15, ¶ 38. On February 1, 2017, Mr. Crowder states that he also wrote to Defendant Lightner describing problems that he experienced obtaining his MS medication, including allegations that Dr. Pillai refused to provide stronger pain medication for MS pain and that the URC prevented him from seeing a pulmonologist. *Id.* at ¶ 40.

On April 7, 2017, Dr. Pillai allegedly examined Mr. Crowder in response to the medical habeas. According to Mr. Crowder, Dr. Pillai pretended to be unaware of Mr. Crowder's issues. Dr. Pillai allegedly checked his vital signs, listened to his breathing and said that he would schedule lab work. *Id.* at ¶ 41. Mr. Crowder states that the lab work was done on April 10, 2017. *Id.* at ¶ 43. On April 25, 2017, Mr. Crowder alleges that Dr. Pillai told him that he would submit another URC request. *Id.* at 16, ¶ 46. Mr. Crowder states that he then underwent another EKG and chest x-ray. *Id.* at ¶¶ 47, 49. According to Mr. Crowder, Defendant Lightner denied receiving Mr. Crowder's February 1, 2017 letter. *Id.* at ¶ 48.

Mr. Crowder claims that he submitted a Freedom of Information ("FOI") request to Defendant Moore seeking the names of all persons on the URC. *Id.* at ¶ 50. Defendant Moore allegedly denied the request and denied knowledge of the URC. *Id.* at ¶ 51. On May 10, 2017, the judge in the state habeas action informed Mr. Crowder that he would be seen by a

4

pulmonologist and a cardiologist. *Id.*, ¶ 53.

### B. Prison Job

Mr. Crowder states that he had a job in the gym, and that his supervisor was Defendant Alvarez. In April and May 2015, Defendant Alvarez was allegedly overheard asking correctional staff and inmate workers why Mr. Crowder went to the medical unit every week. *Id.* at 17, ¶¶ 54-56. On May 20, 2015, Defendant Alvarez allegedly followed Mr. Crowder to the medical unit and asked him what medication he was taking and whether he would change the time of his medication so he would not have to leave his work assignment. Mr. Crowder allegedly responded that the type of medication was none of Defendant Alvarez' business and that he was not willing to change the medication schedule that had been in place since 2005. *Id.*, ¶¶ 57-58. That afternoon, Mr. Crowder claims that he wrote to Warden Chapdelaine, Deputy Warden Guadaramma and Deputy Warden Mudano to inform them that Defendant Alvarez was trying to interfere with his medical appointments. *Id.*, ¶ 59.

When Mr. Crowder reported for work the following day, he was allegedly met by Defendant Alvarez and Nurse McCrystal. Defendant Alvarez had allegedly led Nurse McCrystal to believe that Mr. Crowder wanted to change the time of his medication. Mr. Crowder allegedly stated that he did not want any change. *Id.* at 18, ¶ 60. Since then, Mr. Crowder claims that Defendant Alvarez has acted contemptuously toward Mr. Crowder. *Id.*, ¶ 61.

In response to the allegations in Mr. Crowder's letter, Deputy Warden Mudano allegedly spoke with Defendant Alvarez, who stated that he had tried to make accommodations for Mr. Crowder with the medical department but Mr. Crowder was uncooperative. *Id.*, ¶ 62. Defendant Alvarez, however, allegedly arranged things so Mr. Crowder could not go to the medical

5

department to get his MS medication until an hour past his scheduled time. Mr. Crowder claims that, by the time he would arrive, the pharmacy nurse would be distributing medication throughout the prison so Mr. Crowder often had to wait all day to get his medication. *Id.*, ¶ 63. Defendant Alvarez allegedly told Mr. Crowder that he could not come and go as he pleased. *Id.*, ¶ 64.

Mr. Crowder noted that, despite these restrictions, two gym workers did not report for work every Tuesday morning but went to the library instead; two other gym workers did not report for work every Friday morning but attended a meditation program instead; and another gym worker went to the library every Thursday afternoon. *Id.* at 19, ¶ 66. On June 2, 2015, Mr. Crowder claims that he asked Defendant Alvarez why other workers were allowed to not report for work at all so they could go to places they volunteered to go to, but he was not permitted to leave after completing his duties to get something he needs. Defendant Alvarez allegedly told Mr. Crowder that if he did not like the rules he could "reclass." *Id.*, ¶ 67.

On June 3, 2015, Mr. Crowder states that he was working in the office distributing and collecting equipment. After the last piece of equipment had been returned at the end of the recreation period, Mr. Crowder allegedly told Defendant Alvarez that he was going to the medical unit and would see him later. *Id.*, ¶ 68. Mr. Crowder alleges that other inmates and correctional officers later informed him that Defendant Alvarez "went ballistic" and accused Mr. Crowder of disrespecting his authority and walking out without telling him. *Id.*, ¶ 69.

Mr. Crowder claims that he was not permitted in the gym from June 3, 2015 until the morning of June 9, 2015. Defendant Alvarez also allegedly denied Mr. Crowder access to the gym for his regular recreation period. *Id.*, ¶ 70. On June 9, 2015, Mr. Crowder claims that he

was called to the gym and asked to sign a bad work report which would terminate his job, but he refused to do so. *Id.*, ¶ 71.

On June 9, 2015, Mr. Crowder was allegedly transferred to a housing unit with inmates who had been newly admitted to the facility or who were just coming off segregation. While in that unit, Mr. Crowder claims that he was unable to go to the gym or participate in any recreational programs. The immobility allegedly affected his MS, which required that he exercise regularly. *Id.* at 20, ¶ 73. Mr. Crowder alleges that he remained in this housing unit for three and a half months. During that time, Defendant Alvarez allegedly ignored Mr. Crowder's requests to be placed on the list for the Wellness Program and Over 40 Program. *Id.*, ¶ 74.

On October 1, 2015, Mr. Crowder was allegedly returned to his original housing unit. He claims that he still has not been placed on any program lists. *Id.*, ¶ 76. Since Mr. Crowder's dismissal from his job, Defendant Alvarez has allegedly caused three other African-American gym workers and three African-American volunteers who officiated intramural events to leave. *Id.*, ¶ 76.

## III. DISCUSSION

Mr. Crowder alleges that all Defendants were deliberately indifferent to his serious medical need. "The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted). To establish a claim for deliberate indifference to a serious medical need, Mr. Crowder must allege facts demonstrating two elements. The first element is objective: "the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted). Under this objective element, a

7

court must first determine "whether the prisoner was actually deprived of adequate medical care," and second, "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).

Adequate medical care is objectively reasonable care, as "prison officials who act reasonably cannot be found liable." *Farmer v. Brennan,* 511 U.S. 825, 845 (1994). Mr. Crowder also must allege facts showing that his medical needs, "either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition*.*" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented "a non-exhaustive list" of factors to consider: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

The second element is subjective – the defendant "must be subjectively reckless in [his] denial of medical care." *Spavone*, 719 F.3d at 138. The appropriate inquiry is whether the defendant "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.*"* *Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (quoting *Farmer*, 511 U.S. at 837-38) (internal quotation marks omitted). The defendant must have acted or failed to act "while actually aware of a substantial risk that serious inmate harm will result." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted).

8

In contrast, "mere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (internal quotation marks and citation omitted). Further, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*

Mr. Crowder has alleged that he suffers from MS, a condition for which he was regularly receiving medication. This action concerns the treatment he received in response to his complaints of difficulty breathing and tightness in his chest. Based on the response allegedly given Dr. O'Halloran concerning Mr. Crowder's condition, the Court assumes that Mr. Crowder's complaints are associated with Mr. Crowder's MS. Thus, the Court assumes for purposes of this ruling that Mr. Crowder has a serious medical need.

### A. Claims against URC Members

Mr. Crowder identifies Drs. Ruiz, Farinella, Freston, and Naqvi as comprising the URC. He alleges that the URC twice denied requests for examination by a pulmonologist. Two treating doctors had requested the examination to no avail, and the state court allegedly had to order that the examination be conducted as a result of a medical habeas action. Mr. Crowder provides no information regarding why the URC denied the requests. A disagreement over treatment is not cognizable under Section 1983; however, these types of disagreements typically presume that the differing opinions are based on sound medical judgment. *See Siminausky v. Sean*, No. 3:14-CV-00243 (VLB), 2017 WL 391425, at *4 (D. Conn. Jan. 25, 2017) ("An exercise of medical judgment that results in a disagreement regarding treatment is not cognizable

9

under the Eighth Amendment"); *see also Hathaway v. Coughlin*, 37 F. 3d 63, 70 (2d Cir. 1994) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors.").

In light of the allegations here, including the fact that the state habeas court ordered the examination and the lack of explanation for the URC decisions, the Court cannot assume that the URC decision was based on sound medical judgment. The Court concludes, therefore, that the allegations are sufficient to state a plausible claim for deliberate indifference to a serious medical need by the URC members.

### B. Claims against Defendant Greene

Mr. Crowder identifies Defendant Greene as the nursing supervisor. She is not a doctor, nor was she identified as a member of the USC. According to Mr. Crowder's description of the parties, Defendant Greene is being sued for the deficiencies identified in his statement of facts. Defendant Greene is not explicitly mentioned, however, in the factual allegations. The only reference to deficient performance by nurses is a single allegation that Dr. O'Halloran questioned why nurses had not referred Mr. Crowder to him in April and May of 2013.

The limitations period for filing an action under Section 1983 is three years. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). As Mr. Crowder filed this action in July 2017, any discrete actions occurring prior to July 2014 are time-barred. *Id.* As Mr. Crowder has not alleged facts suggesting that any nurse provided him deficient care within the limitations period, there is no factual basis for a claim against Defendant Greene.

Furthermore, Defendant Greene cannot be found liable for any unconstitutional conduct of her subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (no *respondeat superior* liability under Section 1983). As Mr. Crowder has not alleged any facts suggesting that Defendant Greene provided improper care, nor has he alleged facts suggesting that Defendant Greene was aware that others had done so, any claim against Defendant Greene is dismissed under 28 U.S.C. § 1915A(b)(1).

### C. Claims against Defendant Lightner

Mr. Crowder alleges that he submitted a letter to Defendant Lightner, Health Services Administrator, but she claims to have never received the letter. He also alleges that she incorrectly told him, in February and April 2015, that there was no reference to breathing issues in his medical records. These allegations are insufficient to support a deliberate indifference claim against Defendant Lightner.

Defendant Lightner does not provide medical care and, therefore, she would not be the person to make entries in Mr. Crowder's medical chart regarding his symptoms or treatment. Even assuming that Defendant Lightner was negligent in telling Mr. Crowder that there were no references to breathing issues, negligence which is not cognizable under Section 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *see also Poe v. Leonard*, 282 F.3d 123, 145 (2d Cir. 2001) ("mere negligence is insufficient as a matter of law to state a claim under section 1983"). Thus, the claims against Defendant Lightner are dismissed under 28 U.S.C. § 1915A(b)(1).

### D. Claims against Defendant Moore

Mr. Crowder alleges that Defendant Moore, the FOI Coordinator, denied his request for the names of the URC members. However, Mr. Crowder has not alleged any facts suggesting that Defendant Moore was deliberately indifferent to Mr. Crowder's medical needs. Defendant Moore is not a medical provider, and Mr. Crowder has not alleged facts suggesting that Defendant Moore interfered with Mr. Crowder's ability to seek medical treatment for his complaints.

To the extent that Mr. Crowder is attempting to assert a Section 1983 claim based on the denial of his FOI request, the claim fails. The federal Freedom of Information Act, 5 U.S.C. §552, applies only to the federal government; it does not apply to state agencies. *See Lont v. Robert*s, No. 12-CV-4960 (MKB), 2013 WL 1810759, at *4 (E.D.N.Y. Apr. 26, 2013). Thus, Mr. Crowder must have submitted his request pursuant to the state act. Violations of state law are not cognizable under Section 1983. *See Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) (state law freedom of information act claim is not cognizable under Section 1983). Accordingly, the claim against Defendant Moore is dismissed under 28 U.S.C. § 1915A(b)(1).

### E. Claims against Defendant Alvarez

Finally, Mr. Crowder alleges that Defendant Alvarez was deliberately indifferent to his medical needs because he was unwilling to accommodate Mr. Crowder's need to go to the medical unit for his MS medication on a weekly basis during his work hours and denied him access to exercise programs. Prison guards are deliberately indifferent to serious medical needs when they "intentionally interfere[] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Mr. Crowder alleges that he has been on the same medication distribution

schedule since 2005, but Defendant Alvarez attempted to change that schedule to accommodate his own preferences. The Court considers this to be a plausible claim for deliberate indifference to serious medical needs.

In addition, Mr. Crowder alleges that Defendant Alvarez treated him differently from other gym workers. According to Mr. Crowder, Defendant Alvarez objected to him going to the medical unit for his MS medication and returning to the job, but he voiced no objection to other workers who failed to appear for their jobs at all. The Court considers this allegation sufficient to state a claim that Defendant Alvarez violated the Equal Protection Clause of the United States Constitution.

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1) The claims against Defendants Lightner, Greene and Moore are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1). The case will proceed on the deliberate indifference to medical needs claims against Defendants Ruiz, Farinella, Freston, Naqvi and Alvarez and the equal protection claim against Defendant Alvarez.

(2) **The Clerk of the Court shall** verify the current work addresses for each Defendant, Ruiz, Farinella, Freston, Naqvi, and Alvarez, with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the Complaint to the Defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any Defendant fails to return the waiver request, the Clerk of the Court shall make arrangements for in-person service by the U.S. Marshal Service on him or her in individual

capacity and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     **The Clerk of the Court shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on Defendants Ruiz, Farinella, Freston, Naqvi and Alvarez in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this Order and to file a return of service within thirty (30) days from the date of this Order.

(4)     **The Clerk of the Court shall** a copy of this Order to Plaintiff.

(5)     **The Clerk of the Court shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(6)     Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(7)     Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order.  Discovery requests need not be filed with the Court.

(8)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(9)     Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10)    If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that Plaintiff MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(11)    Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of August, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE