# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

CHRISTOPHER H. CROWDER,
    *Plaintiff*,

v.

DR. FARINELLA, et al.,
    *Defendants*.

No. 3:17-cv-1135 (VAB)

# RULING ON MOTION TO DISMISS

Christopher H. Crowder ("Plaintiff"), currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this Complaint *pro se* under 42 U.S.C. § 1983. He asserts claims for deliberate indifference to serious medical needs and denial of equal protection of the laws. The remaining defendants, Dr. Farinella, Dr. Freston, Dr. Naqvi, Dr. Ruiz and Recreation Supervisor Rudi Alvarez (together, "Defendants"), have moved to dismiss.

For the reasons that follow, Defendants' motion is **GRANTED** with respect to the "class-of-one" equal protection claim, but otherwise **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

#### 1.    Mr. Crowder's Medical Condition

In April 2013, Mr. Crowder, who suffers from multiple sclerosis ("MS"), allegedly

submitted a medical request because he had difficulty breathing. Am. Compl. ¶ 18, ECF No. 23. A nurse allegedly checked his lungs in the housing unit and, although his lungs sounded clear, the nurse allegedly stated that she would put him on the list to see a doctor. *Id.* Mr. Crowder allegedly was not called to see a doctor at that point. *Id.* ¶ 19. In May 2013, he submitted two requests allegedly complaining of tightness in his chest. *Id.* Mr. Crowder was called to the medical unit and examined by a male nurse. *Id.* The nurse allegedly listened to his chest and stated that his lungs sounded clear. *Id.* ¶ 19.

In September 2014, Mr. Crowder saw Dr. O'Halloran. *Id.* ¶ 20. After listening to Mr. Crowder's chest, Dr. O'Halloran allegedly stated that he could not understand why it took the nursing staff so long to schedule a doctor exam. *Id.* Dr. O'Halloran allegedly ran tests, submitted paperwork for lab work and gave Mr. Crowder an inhaler to try for a month. *Id.* Mr. Crowder allegedly returned to see Dr. O'Halloran in November 2014 and reported that the inhaler was ineffective and that his "chest would begin to hurt when it tightened up or squeezed." *Id.* ¶ 21.

At the November visit, Dr. O'Halloran allegedly submitted a request to the Utilization Review Committee ("URC") for examination by a pulmonologist. *Id.* ¶¶ 22–23. The request was denied. *Id.* On April 8, 2015, Mr. Crowder allegedly had an x-ray of his lungs. *Id.* ¶ 28. He allegedly was never told the results. *Id*. On June 1, 2015, Mr. Crowder had an EKG, and he was allegedly "told that his heart seemed fine." *Id.* ¶ 29. In July 2015, a nurse allegedly told Mr. Crowder that his second URC request was in his medical file and had been marked "received." *Id.* ¶ 30.

On May 17, 2016, Mr. Crowder allegedly met with Dr. Pillai, who had replaced Dr. O'Halloran. *Id.* ¶ 33. On August 19, 2016, Dr. Pillai told Mr. Crowder that the URC denied the

request. *Id.* ¶ 34. In December 2016, Mr. Crowder filed a medical habeas action in state court. *Id.* ¶ 38.

On April 7, 2017, Dr. Pillai examined Mr. Crowder, allegedly in response to the medical habeas. *Id.* ¶ 41. Dr. Pillai allegedly pretended to be unaware of Mr. Crowder's issues. *Id.* Dr. Pillai allegedly checked his vital signs, listened to his breathing, and scheduled lab work, which was done on April 10, 2017. *Id.* ¶¶ 41, 43.

On April 25, 2017, Dr. Pillai allegedly told Mr. Crowder that he would submit another URC request. *Id.* ¶ 46. Mr. Crowder allegedly then underwent another EKG and chest x-ray. *Id.* ¶¶ 47, 49. On May 10, 2017, the judge in the state habeas action informed Mr. Crowder that he would be seen by a pulmonologist and a cardiologist. *Id.* ¶ 53.

### 2. Mr. Crowder's Prison Job

Mr. Crowder had a job working in the gym, supervised by Mr. Alvarez. *Id.* ¶¶ 54–55. In April and May 2015, Mr. Alvarez allegedly asked correctional staff and inmate workers why Mr. Crowder went to the medical unit every week. *Id.* ¶¶ 55–56. On May 20, 2015, Mr. Alvarez allegedly followed Mr. Crowder to the medical unit, asked about his medication, and asked whether he would be willing to change the time he took the medication to avoid leaving his work assignment. *Id.* ¶¶ 57–58. Mr. Crowder allegedly responded that the type of medication was none of Mr. Alvarez's business and that he was not willing to change the medication schedule that had been in place since 2005. *Id.* That afternoon, Mr. Crowder wrote to Warden Chapdelaine, Deputy Warden Guadaramma and Deputy Warden Mudano to inform them that Mr. Alvarez was trying to interfere with Mr. Crowder's medical appointments. *Id.* ¶ 59.

When Mr. Crowder reported for work the following day, May 21, 2015, he was met by

Mr. Alvarez and Nurse McCrystal. *Id.* ¶ 60. Mr. Alvarez allegedly had led Nurse McCrystal to believe that Mr. Crowder wanted to change the time of his medication. *Id.* Mr. Crowder stated that he did not want any change. *Id*. Since then, Mr. Alvarez allegedly has acted contemptuously toward Mr. Crowder, including allegedly by telling Mr. Crowder that Deputy Warden Guadaramma was his best friend. *Id.* ¶ 61. In response to Mr. Crowder's letter, Deputy Warden Mudano allegedly spoke with Mr. Alvarez who stated that he had tried to make accommodations for Mr. Crowder with the medical department but Mr. Crowder was uncooperative. *Id.* ¶ 62.

Mr. Alvarez allegedly then prevented Mr. Crowder from leaving his job to take his MS medication until an hour past his scheduled time. *Id.* ¶ 63. By the time he arrived, the pharmacy nurse would usually be "out in the building passing out medication to other units so [Mr. Crowder] sometimes had to wait a day" to get his medication. *Id.* When Mr. Crowder asked to leave to take his medication, Mr. Alvarez allegedly told him that he could not come and go as he pleased. *Id.* ¶ 64.

Mr. Crowder also allegedly noticed that, while he faced these restrictions, other gym workers were allowed to go to the library instead of to work, or to go to a meditation program instead of to work. *Id.* ¶¶ 65–67. On June 2, 2015, Mr. Crowder allegedly asked Mr. Alvarez about this disparity, and Mr. Alvarez told Mr. Crowder that if he did not like the rules he could "reclass." *Id.* ¶ 67.

On June 3, 2015, Mr. Crowder allegedly was working in the office distributing and collecting equipment. *Id.* ¶ 68. After the last piece of equipment had been returned at the end of the recreation period, Mr. Crowder allegedly told Mr. Alvarez that he was going to the medical unit and would see him later. *Id*. Mr. Crowder allegedly was told by other inmates and

correctional officers that Mr. Alvarez "went ballistic" and accused Mr. Crowder of disrespecting his authority and walking out without telling him. *Id.* ¶ 69.

Mr. Crowder allegedly was not permitted in the gym from June 3, 2015, until the morning of June 9, 2015, including for his regular recreation period. *Id.* ¶ 70. On June 9, 2015, Mr. Crowder was allegedly called to the gym and asked to sign a bad work report which would terminate his job, which he refused to sign. *Id.* ¶ 71.

On June 9, 2015, Mr. Crowder was allegedly transferred to a housing unit with inmates newly admitted to the facility or just coming off segregation. *Id.* ¶ 73. While there, Mr. Crowder was unable to go to the gym or participate in any recreational programs; the immobility allegedly affected his MS, which required that he exercise regularly. *Id.* Mr. Crowder remained in this housing unit for over three months. *Id.* ¶ 74. During that time, Mr. Alvarez allegedly ignored Mr. Crowder's requests to be placed on the list for the Wellness Program and Over 40 Program. *Id.*

On October 1, 2015, Mr. Crowder allegedly was returned to his original housing unit. *Id.* ¶ 75. He still has not been placed on any program lists. *Id.* Since Mr. Crowder's dismissal from his job, Mr. Alvarez has allegedly caused three other African-American gym workers and three African-American volunteers who officiated intramural events to leave. *Id.* ¶ 76.

### B. PROCEDURAL HISTORY

By Initial Review Order filed on August 7, 2017, the Court dismissed all claims against Defendants Lightner, Greene and Moore. *See* IRO, ECF No. 9. On November 29, 2017, Mr. Crowder filed an Amended Complaint, which was nearly identical to the original Complaint and includes all of the claims from the original Complaint. *See* Am. Compl., ECF No. 23. The claims against Defendants Lightner, Greene and Moore remain dismissed for the reasons stated in the

Initial Review Order. The only remaining claims in this case are the deliberate indifference to medical needs claims against Defendants Ruiz, Farinella, Freston, Naqvi, and Alvarez and the equal protection claims against Mr. Alvarez.

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and the court will dismiss any claim that fails "to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), the court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

At this stage, the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views allegations in the light most favorable to the plaintiff, and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359

(2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), cert. denied, 537 U.S. 1089 (2002). Furthermore, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## III. DISCUSSION

Defendants seek to dismiss the remaining claims of deliberate indifference and equal protection for three reasons. First, Defendants argue that Mr. Crowder has not alleged facts to establish that Drs. Farinella, Freston, Naqvi, and Ruiz were personally involved in the facts underlying his deliberate indifference claim. Mot. Dismiss at 7. Second, Defendants argue that the allegations against Mr. Alvarez in the Amended Complaint fail to state a claim either of deliberate indifference or of an equal protection clause violation. *Id.* at 10–20. Finally, Defendants argue that their conduct was objectively reasonable and that they therefore are entitled to qualified immunity. *Id.* at 21.

### A. Personal Involvement

Defendants argue first that Mr. Crowder's deliberate indifference claim against Drs. Farinella, Freston, Ruiz, and Naqvi must be dismissed for failure to state a claim because Mr. Crowder has not established that those Defendants were members of the URC, which denied Mr. Crowder's requests for an examination by a pulmonologist. *Id.* at 6–7 ("There are no facts

7

presented that Drs. Farinella, Freston, Naqvi, and Ruiz were the doctors that comprised the Utilization Review Committee when the plaintiff's URC requests were addressed.").

Mr. Crowder does allege that he sought the names of URC members, and "Freedom of Information Liaison Moore has denied [him] access" to those names because Counselor Moore "did not know what the URC [was.]" Am. Compl. ¶ 3. Mr. Crowder also, however, alleges that Drs. Farinella, Freston, Ruiz, and Naqvi were each "appointed by the UConn Correctional Management Health Care which reviews medical requests from facility doctors for inmates to be further evaluated and/or treated by specialists," and that [a]t all times relevant to this Complaint [all four doctors] of the URC acted under the color of state law." Am. Compl. ¶¶ 6–9. In addition, Mr. Crowder sued these four doctors in their "individual as well as official capacity for those acts and omissions described fully below." *Id*. Mr. Crowder also alleges that his doctors submitted requests for examinations to the URC, and that those requests were denied despite his serious medical need. *Id.* ¶¶ 22–23, 28–30, 34, 38.

At this early stage, Mr. Crowder is required to include only a short and plain statement of an entitlement to relief. *See* Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555 (explaining that a complaint need not contain detailed factual allegations); *Sykes*, 723 F.3d at 403 ("[P]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'") (quoting *Triestman*, 470 F.3d at 474). Mr. Crowder's allegations that these doctors served on the URC and that the URC denied several requests for consultative examinations are sufficient to inform these Defendants of the claim against them. If Mr. Crowder's information is incorrect, Defendants may present evidence in support of a motion for summary judgment showing that they were not members of the URC when the denials were issued.

The motion to dismiss therefore is denied.

B.     **Deliberate Indifference to Medical Needs**

Mr. Crowder asserts deliberate indifference claims against Drs. Ruiz, Farinella, Freston, and Naqvi as members of the URC for denying a pulmonary consultation, and against Mr. Alvarez for preventing him from attending his weekly medical appointments. Defendants move to dismiss this claim, arguing that Mr. Crowder has failed to allege sufficient facts to support a claim that Defendants were deliberately indifferent to a serious medical need. Mot. Dismiss at 4.

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted). To establish a claim for deliberate indifference to a serious medical need, Mr. Crowder must allege facts demonstrating two elements. The first is objective and requires that "the alleged deprivation of adequate medical care must be sufficiently serious." *Id.* (internal quotation marks omitted). Under this element, the Court must determine first "whether the prisoner was actually deprived of adequate medical care," and second, "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). Adequate medical care is reasonable care such that "prison officials who act reasonably cannot be found liable." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

On this first element, Mr. Crowder also must allege facts showing that his medical needs, "either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented "a non-exhaustive

9

list" of factors to consider: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Second, the defendant "must be subjectively reckless in [his] denial of medical care." *Spavone*, 719 F.3d at 138. The inquiry is whether the defendant "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Lewis v. Swicki*, 629 Fed. App'x 77, 79 (2d Cir. 2015) (quoting *Farmer*, 511 U.S. at 837–38) (internal quotation marks omitted). The defendant must have acted or failed to act "while actually aware of a substantial risk that serious inmate harm will result." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted). In contrast, "mere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (internal quotation marks and citation omitted). Further, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*

Mr. Crowder suffers from MS, and regularly receives medication for this condition. He alleges that Defendants failed to treat him after he complained of difficulty breathing and tightness in his chest, and that he was prevented from receiving his weekly medication. Defendants do not challenge the seriousness of Mr. Crowder's medical need. The Court therefore need only consider the second, subjective, component of the deliberate indifference standard.

### 1. Defendants Farinella, Freston, Ruiz, and Naqvi

In the Initial Review Order, the Court noted that a disagreement over treatment is not cognizable under Section 1983, as long as the differing opinions are based on sound medical judgment. *See Siminausky v. Sean*, No. 3:14-cv-00243(VLB), 2017 WL 391425, at *4 (D. Conn. Jan. 25, 2017) ("An exercise of medical judgment that results in a disagreement regarding treatment is not cognizable under the Eighth Amendment."); *see also Hathaway v. Coughlin*, 37 F. 3d 63, 70 (2d Cir. 1994) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors."). Mr. Crowder alleges that the URC repeatedly denied the consultative examination and only approved the examination after the state court intervened. The Court noted that there was insufficient information to determine whether the URC decisions were based on sound medical judgment and permitted the claim to proceed.

Defendants ask the Court to take judicial notice of state court records showing that no order was entered in the state habeas case.[1] In response, Mr. Crowder states that the state court action occurred during a pretrial conference, not as an official order. The Court is aware of no rule requiring that all state court actions or recommendations made in an attempt to resolve a case be memorialized in a formal order on the docket. The absence of a formal order does not negate Mr. Crowder's claim.

---

[1] The Court may take judicial notice of state court records. *See Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394, 402 (2d Cir. 2003) ("[I]t is appropriate for this court to affirm the district court by taking judicial notice of state court records which leave no doubt as to the correctness of the district court's determination.").

Mr. Crowder alleges that the URC twice denied his request for consultative examination but then granted it when the state court became involved. Am. Compl. *Id.* ¶¶ 22–23, 28–30, 34, 38, 53. These allegations support a reasonable inference that the URC denials were not supported by sound medical judgment. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true.") (citation omitted).

The question of whether this claim is merely a disagreement over treatment or a deliberate denial of needed care may be addressed at the summary judgment stage, but not now. *See Iqbal*, 556 U.S. at 696 ("*Twombly* does not require a court at the motion-to-dismiss stage to consider whether the factual allegations are probably true. We made it clear, on the contrary, that a court must take the allegations as true, no matter how skeptical the court may be.") (citing *Twombly*, 550 U.S. at 555); *see also Tuttle v. Prudential Ins. Co. of Am.*, 17-cv-00100 (VAB), 2018 WL 1245731, at *8 (D. Conn. 2018) ("Given the fact-bound nature of the inquiry, Defendant's motion [to dismiss] will be denied as to [one] claim, but without prejudice to the renewal upon filing of a motion for summary judgment, after the completion of discovery in this case."). Defendants' motion to dismiss therefore is denied as to the deliberate indifference claim against Defendants Farinella, Freston, Ruiz and Naqvi.

### 2. Defendant Alvarez

Mr. Crowder also claims that Mr. Alvarez was deliberately indifferent to his medical needs because he was unwilling to accommodate Mr. Crowder's need for his MS medication on a weekly basis during his work hours and denied him access to exercise programs. *See* Am. Compl. ¶¶ 63–64. Prison guards are deliberately indifferent to serious medical needs if they

12

"intentionally interfere[] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Mr. Crowder alleges that he has been on the same medication distribution schedule since 2005, and that Mr. Alvarez refused to permit him to attend his appointment and instead attempted to change that schedule to accommodate Alvarez's preferences. Am. Compl. ¶¶ 60–64.

Defendants argue that Mr. Crowder's claim is a claim for delay in treatment, rather than deliberate indifference, based on his allegation that, as a result of Mr. Alvarez's refusal to permit him to go to his medical appointment on one occasion, Mr. Crowder was unable to receive his weekly medication. Mot. Dismiss at 10. The Court disagrees.

As described in the Initial Review Order, Mr. Crowder's actual claim is that Mr. Alvarez intentionally interfered with his long-standing medication regimen. *See* IRO at 12–13. As Defendants have not addressed the claim asserted in the Amended Complaint, the motion to dismiss is denied as to the deliberate indifference claim against Mr. Alvarez.

### C. Equal Protection

Mr. Crowder alleges that he was treated differently from other gym workers in that Mr. Alvarez objected to him going to the medical unit for his MS medication and returning to the job while he voiced no objection to absences from other workers in the gym. Am. Compl. ¶¶ 66–67. He also alleges that, after he was terminated from his job, six other African-American inmate workers or volunteers were removed from the recreation department. *Id.* ¶ 76.

The Equal Protection Clause protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather, it requires that similarly situated persons be treated the same. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S.

432, 439–40 (1985). To state an equal protection claim, the prisoner must allege facts showing that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

Mr. Crowder does not explicitly allege that he is a member of a protected class or that he was treated differently because of a suspect classification. *See Robles v. Dennison*, 745 F. Supp. 2d 244, 301 n.18 (W.D.N.Y. 2010) (merely being a prisoner is insufficient to put plaintiff in a suspect class), *aff'd*, 449 Fed. App'x 51 (2d Cir. 2011). He does not specifically identify his race. He does, however, allege that following his dismissal, Mr. Alvarez caused six *other* African-American inmate workers and volunteers to be removed from the recreation department. Am. Compl. ¶ 76. From this allegation, the Court infers that Mr. Crowder is African-American. Construing the allegations in Mr. Crowder's favor, the Court concludes that the allegation is sufficient to support an equal protection claim that Mr. Alvarez was removing inmates from the recreation program based on race.

Mr. Crowder also asserts a "class of one" equal protection claim. To state a valid claim under a "class of one," Mr. Crowder must allege, first, that he was intentionally treated differently from others who are similarly situated. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Second, he must allege facts showing that there is no rational basis for the difference in treatment. *Id.* He must allege an "extremely high" level of similarity with the person to whom he is comparing himself; their circumstances must be "prima facie identical."

14

*Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled in part on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008); *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("[T]o succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and different in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.") (quoting *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

Mr. Crowder identifies other inmate workers in the recreation department who were allowed to miss work for various activities. Am. Compl. ¶¶ 65–67, 73–74. For the purpose of the motion to dismiss, the Court considers these other inmates to be similarly situated to Mr. Crowder. Nevertheless, these factual allegations fall far short of indicating that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and different in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston*, 610 F.3d at 59 (citation omitted); *see Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). Defendant's motion to dismiss therefore is granted as to his "class-of-one" equal protection claims against Mr. Alvarez.

### D. Qualified Immunity

Finally, Defendants argue that they are protected by qualified immunity. Mot. Dismiss at 15–21. Qualified immunity protects government officials from civil damages liability unless the

official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). When analyzing a claim of qualified immunity under 42 U.S.C. § 1983, the Court must consider two questions. First, whether the defendant did in fact violate a constitutional right, and second, whether the contours of that right were "sufficiently clear that a reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 314–15 (2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (internal quotation marks omitted)). The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. *Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

For qualified immunity to not apply, the Court must find the contours of the right "'sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that he was violating it,' meaning that 'existing precedent … placed the statutory or constitutional question beyond debate.'" *City & Cty. of San Francisco, Calif. v. Sheehan*, ___ U.S. ___, 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Although the Supreme Court does not require that the exact actions have previously been held unconstitutional, "[r]ights must be clearly established in a 'particularized' sense, rather than at a high level of generality; and such rights are only clearly established if a court can 'identify a case where an offic[ial] acting under similar circumstances' was held to have acted unconstitutionally." *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 5523 (2017). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken

16

judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Sheehan*, 135 S. Ct. at 1774 (quoting *al-Kidd*, 563 U.S. at 744); *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (qualified immunity standard is forgiving, protecting all but those who are plainly incompetent or who knowingly violate the law) (citations omitted).

Defendants asserting qualified immunity on a motion to dismiss face a difficult task. *See Lewis v. Annucci*, No. 16-CV-10048(NSR), 2018 WL 1281832, at *4 (S.D.N.Y. Mar. 2, 2018) (defendants asserting qualified immunity on a motion to dismiss held to a higher standard than on motion for summary judgment). At this stage, the Court must accept as true the allegations in the Amended Complaint and draw all reasonable inferences from those allegations. To survive the motion to dismiss, Mr. Crowder need only allege sufficient facts to state a plausible claim for relief. Thus, a defense of qualified immunity in a motion to dismiss can only be sustained if the facts supporting the defense appear on the face of the complaint and the plaintiff cannot state any facts that would prevent application of qualified immunity. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

Defendants argue that they are protected by qualified immunity on the claims against defendants Farinella, Freston, Ruiz, and Naqvi because Mr. Crowder has no right to a consultative examination. Mot. Dismiss at 19. While this assertion is correct, as noted above, any denials of requested treatment must be based on sound medical judgment. Mr. Crowder's allegation that requested treatment was provided after the state court became involved supports an inference that the initial denial was not based on sound medical judgment. Therefore, because the current record is insufficient to evaluate the reasons treatment was denied, the Court cannot determine, at this stage, whether qualified immunity is warranted on those claims.

As for Mr. Alvarez, Defendants' qualified immunity argument regarding the deliberate indifference claim is not premised on the actual claim asserted in the Amended Complaint. *See infra* § III.B.2. Regarding the equal protection claims, Mr. Crowder alleges that Mr. Alvarez was removing all African-American inmates from jobs or volunteer positions in the recreation area and was treating absences by non-African-American inmates differently. A reasonable correctional official should understand that he cannot discriminate against inmates based on race or treat similarly situated inmates differently. *See Sheehan*, 135 S. Ct. at 1774 (requiring that, for qualified immunity to not apply, the right must have been sufficiently clearly defined that "any reasonable official in [the defendant's] shoes would have understood that he was violating it") (quoting *al-Kidd*, 563 U.S. at 741).

Thus, based on the allegations in the Amended Complaint, qualified immunity is not warranted on these claims, and Defendants' motion is denied on those grounds.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 32, is **GRANTED** with respect to his "class-of-one" equal protection claim, but otherwise **DENIED**.

SO ORDERED at Bridgeport, Connecticut, this 14th day of May, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE