**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CHRISTOPHER H. CROWDER,<br>    *Plaintiff*,<br><br>    v.<br><br>DR. FARINELLA, *et al.*,<br>    *Defendant*. | No. 3:17-cv-1135 (VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Christopher H. Crowder ("Plaintiff"), currently incarcerated at MacDougall-Walker

Correctional Institution and proceeding *pro se*, filed this lawsuit under 42 U.S.C. § 1983. He

contends that Drs. Farinella, Cary Freston, Syed Naqvi, and Ruiz, and Rodolofo Alvarez, a

recreation supervisor (the "Defendants") were deliberately indifferent to his medical needs, and

violated his Eighth Amendment Rights.[1] Complaint, ECF No. 1 (July 10, 2017).

Defendants have filed a motion for summary judgment and seek to dismiss the case in its

entirety. Motion for Summary Judgment, ECF No. 58 (Feb. 7, 2019).

For the following reasons, the motion for summary judgment is **GRANTED**.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Allegations[2]

#### 1.  Medical Care

Mr. Crowder allegedly suffers from multiple sclerosis, a condition allegedly in remission

during the time relevant to this lawsuit. From June 2013 through November 2015, the medical

---

[1] The record does not contain the first names of Drs. Farinella and Ruiz. As a result, the Court will refer to them simply by their surnames.
[2] The facts are taken from the defendants' Local Rule 56(a)(1) Statement and supporting exhibits submitted by both parties, as well as Mr. Crowder's Local Rule 56(a)(2) statement.

1

staff at MacDougall-Walker Correctional Institution treated Mr. Crowder a number of times. Defendants' Local Rule 56(a)(1) Statement, ECF No. 58-2 ¶ 1 (Feb. 7, 2019) ("Defs.' SMF").

Drs. Farinella, Freston, Ruiz, and Naqvi served on the Utilization Review Committee, *see* Amended Complaint, ECF No. 23 (Nov. 29, 2017) ("Am. Compl."), which is a panel comprised of four doctors in order determine whether a consultation with outside physicians or specialists is necessary. Memorandum in Support of Defendants' Motion, ECF No. 58 at 15 (Feb. 7, 2019) ("Defs.' Br.").

In April of 2015, Mr. Crowder first met with Dr. Omprakash Pillai, a treating physician at the facility. Defs.' SMF ¶ 3. On June 1, 2015, Dr. Pillai performed an examination of Mr. Crowder and submitted two requests to the Utilization Review Committee, for a consultative examination by a pulmonologist and an echocardiogram by a cardiologist. *Id*. ¶¶ 3-5, 7.

The Utilization Review Committee denied both requests. With respect to the first request, the objective data observed did not show any abnormalities and the Utilization Review Committee thus recommended Mr. Crowder be monitored and reassessed over time. *Id*. ¶¶ 6-7. With respect to the second request, the Utilization Review Committee recommended that the treating physician obtain an echocardiogram, continue monitoring Mr. Crowder, and consider a mental health referral. *Id*. ¶¶ 7-8. In August of 2015, Dr. Pillai met with Mr. Crowder to discuss the requests. *Id*. ¶ 9.

Mr. Crowder continued to go to the medical unit on a regular and recurring basis. *Id*. ¶ 10. On September 8, 2015, he met with a nurse to discuss his concerns after strenuous exercise, including the tightening of his right hip. *Id*. ¶ 11. The nurse attributed Mr. Crowder's concerns to his multiple sclerosis and noted that there was no indication of breathing problems that would prevent him from exercising. *Id*.

On May 17, 2016, Dr. Pillai met with Mr. Crowder and again submitted two requests to the Utilization Review Committee: an initial consultation with a pulmonologist and an initial consultation with a cardiologist. *Id.* ¶¶ 12-13, 15. The Utilization Review Committee denied the first request, and instructed the treating physician to obtain updated chest x-rays and follow-up with Mr. Crowder. *Id.* ¶ 14. The Utilization Review Committee also denied the second request because no objective abnormalities allegedly were found, and instructed the treating physician to obtain an echocardiogram, continue monitoring Mr. Crowder, and reassess his condition. *Id.* ¶ 16.

On April 25, 2017, after additional testing and monitoring, Dr. Pillai submitted two new Utilization Review Committee Requests. *Id.* ¶ 17. The requests sought initial consultative examinations for Mr. Crowder with a cardiologist and a pulmonologist within two months of the request. *Id.* ¶¶ 18-19. The Utilization Review Committee granted these requests. As a result, on June 12, 2017, a pulmonologist examined Mr. Crowder and, on June 14, 2017, a cardiologist examined him. *Id.* ¶¶ 20, 22.

The pulmonologist recommended a spirometry[3] with total lung volumes and diffusion capacity.[4] *Id.* ¶ 21. If Mr. Crowder's pulmonary function test was normal, the pulmonologist would recommend him having a cardiac workup to determine whether his dyspnea[5] had a cardiac cause. *Id.* The cardiologist recommended an echocardiogram and a nuclear stress test. *Id.* ¶ 21. On June 20, 2017, the Utilization Review Committee approved the additional tests. *Id.* ¶ 24.

---

[3] A spirometry test is "used to measure the speed and volume at which patients can exhale[.]" *United States ex rel. Mikes v. Straus*, 84 F.Supp.2d 427, 430 (S.D.N.Y. 1999). ( "[A] common office test used to assess how well your lungs work by measuring how much air you inhale, how much you exhale and how quickly you exhale.").
[4] Diffusion capacity tests "the transfer of gas from air in the lung to the red blood cells in lung blood vessels[.]" *Johnson v. Comm'r of Soc. Sec.*, 2017 WL 4155408, at *3 (S.D.N.Y. Sept. 18, 2017).
[5] "[D]yspnea—or shortness of breath[.]" *Mack v. Astrue*, 2011 WL 1230263, at *13 (D. Conn. Feb. 18, 2011).

On July 31, 2017, Dr. Pillai performed another examination of Mr. Crowder, noted common back pain, and recommended that Mr. Crowder continue performing lower back exercise and taking simple analgesics. . *Id.* ¶ 25. Mr. Crowder alleges that he has a degenerative disc disease and did not have common back pain. Plaintiff's Statement of Disputed Facts, ECF No. 62 ¶ 25 (Mar. 7, 2019) ("Pl.'s SDF").

On August 22, 2017, both tests recommended by the cardiologist were performed. Defs.' SMF ¶¶ 26-27. Mr. Crowder's echocardiogram results were in the normal range and did not indicate any abnormality that would require further monitoring or an additional consultation. *Id.* ¶ 26. The nuclear stress test revealed no evidence of myocardial ischemia[6] on the myocardial perfusion imaging. No reversible defects were identified on stress imaging. *Id.* ¶ 27. During the test, Mr. Crowder did not complain of chest pain or shortness of breath. *Id.*

On August 29, 2017, the pulmonary function tests were conducted. *Id.* ¶ 28. Mr. Crowder's lung volumes and diffusion capacity were normal. *Id.* There was no evidence of an obstruction or restriction. *Id.* The test results also did not disclose any abnormalities or conditions that warranted additional testing or follow-up consultations. *Id.* ¶ 29.

### 2. Recreation Job

During this same time period, Mr. Crowder worked at the gym at MacDougall-Walker Correctional Institution, where Mr. Alvarez served as his supervisor. *Id.* ¶ 39. As a supervisor, Mr. Alvarez had to account for all gym workers at all times. *Id.* ¶ 47. Gym workers had to report for work twice a day, Monday through Saturday, and once on Sunday. *Id.* ¶ 41. Workers reported for the first shift between 8:30 a.m. and 8:45 a.m. *Id.* ¶ 42. Inmates could use the gym from 8:45

---

[6] "'Myocardial ischemia' refers to 'inadequate circulation of blood to the myocardium, usually as a result of coronary artery disease.'" *Roos v. Astrue*, 2008 WL 2309166, at *4 n.2 (S.D.N.Y. 2008) (citing *Steadman's Medical Dictionary* 924 (27th ed. 2000).

a.m. until 9:45 a.m.  *Id.* ¶ 43.  When the inmates left the gym at 9:45 a.m., the gym workers had

responsibility for cleaning it.  *Id.* ¶ 44.

In early 2015, Mr. Crowder allegedly began leaving the gym at 9:45 a.m. without

permission.  *Id.* ¶ 45. Other inmates allegedly complained to Mr. Alvarez that Mr. Crowder was

leaving without helping them complete the work.  *Id.* ¶ 46.  Mr. Alvarez allegedly spoke with

Mr. Crowder and told him to stop leaving the gym without permission, *id*. ¶ 48, which was Mr.

Crowder's first verbal warning. *Id*. ¶ 49. When Mr. Crowder allegedly continued to leave the

gym without permission, Mr. Alvarez issued a second verbal warning. *Id*.

Leaving the gym without permission is considered disobeying a direct order and

allegedly could endanger institutional safety and security. *Id.* ¶¶ 50-51. Rather than issuing a

disciplinary report, Mr. Alvarez allegedly asked Mr. Crowder about his unauthorized departures

from the gym.  *Id.* ¶ 53.  Mr. Crowder said he was going to the medical unit.  *Id.* ¶ 54.  Mr.

Alvarez does not recall whether, in accordance with customary practice, Mr. Crowder had

permission to leave the gym and go to the medical unit but states that, if Mr. Crowder had a pass,

he would have permitted Mr. Crowder to go to the medical unit.  *Id.* ¶¶ 55-56. Mr. Alvarez

contends that Mr. Crowder's medication was administered once a week, but he was leaving the

gym three times a week.  *Id.* ¶¶ 57-58.  Mr. Crowder's medication allegedly did need to be

administered at the same time each week.  *Id.* ¶ 72.

Mr. Crowder disputes all of Mr. Alvarez's statements and submits copies of medical

passes issued to him in October 2016 and February 2019.  Pl.'s SDF ¶¶ 40-66; *see also*

Plaintiff's Opposition to Summary Judgment: Exhibit A, ECF No. 62 at 33 (Mar. 7, 2019) ("Pl.'s

Ex. A").

**B.      Procedural History**

On July 10, 2017, Mr. Crowder sued Dr. Farinella, Dr. Freston, Dr. Naqvi, Dr. Ruiz, Raquel Lightner, C.C. Moore, Heidi Greene and Rudi Alvarez under 42 U.S.C. § 1983 for alleged violations of his civil and constitutional rights. Complaint, ECF No. 1 ¶ 6 (July 10, 2017) ("Compl.").

Specifically, Mr. Crowder alleged that (1) Raquel Lightner, the Utilization Review Committee Health Service Administrator, and Heidi Greene, the Nurse Supervisor, refused to provide him with adequate medical treatment, Compl. ¶ 2; (2) C.C. Moore, the Freedom of Information Liaison, denied him access to the names of the Utilization Review Committee members, *id.* ¶¶ 3, 50–52; (3) Dr. Ruiz, Dr. Farinella, Dr. Freston and Dr. Naqvi, as employees of the Utilization Review Committee, were deliberately indifferent towards Mr. Crowder's requests for pulmonary examinations, *id.* ¶¶ 6–9, 23, 34; and (4) Mr. Alvarez, the recreation supervisor, interfered with and showed deliberate indifference to his medical needs, *id.* ¶¶ 54–76. Mr. Crowder alleged that these actions violated his rights under the Eighth Amendment. *Id.* ¶ 79.

Mr. Crowder also moved for leave to proceed *in forma pauperis.* Motion for Leave to Proceed *in forma pauperis*, ECF No. 2 (July 10, 2017). On July 18, 2017, Magistrate Judge William Garfinkel granted that motion. Order, ECF No. 8 (July 18, 2017).

On August 7, 2017, the Court reviewed the complaint under 28 U.S.C. 1915A(b)(1) and dismissed the claims against Ms. Lightner, Ms. Greene and Mr. Moore, without prejudice, because (1) Mr. Crowder failed to allege facts suggesting Ms. Greene provided him with improper care or was aware that others had done so; (2) Ms. Lightner was not responsible for providing Mr. Crowder medical care and therefore would not be the person to make entries into Mr. Crowder's medical chart regarding his symptoms or treatment; and (3) Mr. Crowder failed to

allege facts suggesting that Mr. Moore interfered with his ability to seek medical treatment. Initial Review Order, ECF No. 9 (Aug. 7, 2017).

The Court allowed the case to proceed on the deliberate indifference to medical needs claims against Dr. Farinella, Dr. Freston, Dr. Naqvi, Dr. Ruiz, and Mr. Alvarez, as well as the equal protection claim against Mr. Alvarez. *Id.*

On September 22, 2017, Mr. Crowder moved for the appointment of pro bono counsel to represent him in this case. Motion to Appoint Counsel, ECF No. 17 (Sept. 22, 2017).

On October 17, 2017, Mr. Crowder moved for leave to file an Amended Complaint. Motion to Amend Complaint, ECF No. 18 (Oct. 17, 2017).

 On November 28, 2017, the Court denied the motion to appoint counsel, without prejudice. Order, ECF No. 21 (Nov. 28, 2017). The Court explained that Mr. Crowder had not demonstrated that he was unable to obtain counsel and that appointment was not warranted at the time. *Id.* at 2.

That same day, the Court granted the motion to amend, explaining that "[a]s the defendants have not yet responded to the Complaint… Mr. Crowder may amend his Complaint once as of right." Ruling on Motion to Amend Complaint, ECF No. 22 (Nov. 28, 2017).

The Court therefore directed the Clerk to docket the Amended Complaint. It noted that while Mr. Crowder had supplemented his allegations regarding medical care and withdrawn his claim against Ms. Greene, he had reasserted his claims against Ms. Lightner and Mr. Moore without alleging "new facts that would alter the analysis in the Initial Review Order." *Id.* at 1.

Accordingly, the Court found that the "claims against Ms. Lightner and Mr. Moore . . . remain dismissed for the reasons stated in the Initial Review Order." *Id.*

On November 29, 2017, the Clerk of the Court docketed Mr. Crowder's Amended Complaint, ECF No. 23 (Nov. 29, 2017) ("Am. Compl.").

On December 4, 2017, Mr. Crowder moved for an "immediate injunction," asking that he be treated immediately for his breathing issue. Motion for Injunction, ECF No. 24 (Dec. 4, 2017). Mr. Crowder alleged that while a recent pulmonary function test supposedly showed no abnormalities, he was still having difficulty breathing. Mr. Crowder specifically sought to be prescribed either Advair or Symbicort. *Id.*

On December 24, 2017, Dr. Farinella, Dr. Freston, Dr. Naqvi, Dr. Ruiz and Mr. Alvarez opposed Mr. Crowder's motion for injunctive relief. Defendants's Opposition to Plaintiff's Motion for Injunction, ECF No. 26 (Dec. 24, 2017).

On January 10, 2018, Mr. Crowder responded to Defendants' opposition to his motion for injunctive relief. Response to Defendants' Opposition of Plaintiff's Motion for Injunction, ECF No. 27 (Jan. 10, 2018).

On January 19, 2018, the Court denied Mr. Crowder's motion for preliminary injunctive relief, finding that Mr. Crowder failed to provide sufficient evidence to prove that he would suffer irreparable harm. Ruling on Motion for Preliminary Injunction, ECF No. 28 (Jan. 19, 2018).

On January 31, 2018, Defendants moved to dismiss Mr. Crowder's Amended Complaint. Motion to Dismiss, ECF No. 32 (Jan. 31, 2018). Defendants sought to dismiss Mr. Crowder's claims of deliberate indifference and equal protection because: (1) Mr. Crowder had not alleged facts to establish that Dr. Farinella, Dr. Freston, Dr. Naqvi and Dr. Ruiz were personally involved in the facts underlying his deliberate indifference claim, *id.* at 6–10; (2) allegations against Mr. Alvarez failed to state a claim either of deliberate indifference or of an equal

protection clause violation, *id.* at 10–14; and (3) Defendants were entitled to qualified immunity because Mr. Crowder was not entitled to a consultative examination, *id.* at 15–22.

On March 21, 2018, Mr. Crowder opposed Defendants' motion to dismiss. Objection to Motion to Dismiss, ECF No. 36 (Mar. 21, 2018).

On May 14, 2018, the Court granted Defendants' motion to dismiss with respect to the class-of-one equal protection claim, because Mr. Crowder failed to allege this claim sufficiently. Ruling on Motion to Dismiss, ECF No. 7 at 15 (July 18, 2017).

But, the Court otherwise denied the motion to dismiss and determined that: (1) Mr. Crowder had sufficiently alleged the personal involvement of Drs. Farinella, Freston, Ruiz, and Naqvi to state a claim, *id.* at 8; (2) the question of whether the Utilization Review Committee's denial of Mr. Crowder's requests was deliberate indifference or merely a disagreement over treatment was a fact-bound inquiry to be addressed at summary judgment, *id.* at 12; (3) Defendants had failed to respond to Mr. Crowder's actual claim, as described in the Initial Review Order and asserted in his Amended Complaint, that Mr. Alvarez treated him indifferently by intentionally interfering with his long-standing medication regimen, *id.* at 13; (4) Defendants's argument for the qualified immunity of Mr. Alvarez was not premised on the actual claim in the Amended Complaint, *id.* at 18; and (5) Defendants's argument of qualified immunity for Dr. Farinella, Dr. Freston, Dr. Naqvi and Dr. Ruiz would be based on whether the Utilization Review Committee's decision to deny Mr. Crowder's requests for pulmonary examinations was a mere disagreement in treatment, and that the record was insufficient at the motion to dismiss stage to evaluate the reasons treatment was denied, *id.* at 17.

On May 21, 2018, Mr. Crowder again moved for appointment of counsel. Motion to Appoint Counsel, ECF No. 38 (May 21, 2018). On June 26, 2018, the Court denied that motion,

without prejudice, finding that Mr. Crowder failed to provide evidence suggesting that he could not obtain legal counsel. Ruling and Order on Motion for Appointment of Counsel, ECF No. 39 (June 26, 2018).

The Court stated that "[a]s Mr. Crowder provided no evidence suggesting that Inmates' Legal Aid Program attorneys have determined that he fails to state a prima facie case, legal assistance may be available." *Id.* at 2. Moreover, as Mr. Crowder had provided no evidence suggesting that he cannot obtain legal assistance from Inmates' Legal Aid Program," the Court found that appointment of counsel was not warranted *Id.*

On July 9, 2018, Defendants responded to the Amended Complaint. Answer, ECF No. 41 (July 9, 2018).

On July 10, 2018, Defendants moved to depose Mr. Crowder. Motion to Depose Incarcerated Person, ECF No. 42 (July 10, 2018).

On July 11, 2018, the Court granted that motion. Order, ECF No. 43 (July 11, 2018).

On August 23, 2018, Mr. Crowder again moved for the appointment of counsel. Motion to Appoint Counsel, ECF No. 46 (Aug. 23, 2018).

On October 2, 2018, the Court denied that motion, reiterating that "any future motion for appointment of counsel shall include evidence showing that the assistance available from Inmates Legal Aid Program is insufficient at the current stage of litigation." Order, ECF No. 48 (Oct. 2, 2018).

On January 9, 2019, Defendants moved to file medical records in support of their prospective motion for summary judgment under seal. Motion to Seal Medical Records, ECF No. 54 (Jan. 9, 2019).

On January 10, 2019, the Court granted Defendants' motion. Order, ECF No. 55 (Jan. 10, 2019).

On February 7, 2019, Defendants moved for summary judgment. Defendants' Motion for Summary Judgment, ECF No. 58 (Feb. 7, 2019) ("Defs.' Mot."); Memorandum in Support of Defendants' Motion, ECF No. 58 (Feb. 7, 2019) ("Defs.' Br."); Local Rule 56(a)(1) Statement, ECF No. 58 ("Defs.' SMF") (Feb. 7, 2019).

Defendants argue that the undisputed facts demonstrate that (1) Dr. Farinella, Dr. Freston, Dr. Naqvi, and Dr. Ruiz did not subject Mr. Crowder to deliberate indifference, Defs.' Br. at 15–17; (2) that Mr. Alvarez did not deprive Mr. Crowder of medical treatment, *id.* at 17–18 and (3) that Defendants are entitled to qualified immunity, *id.* at 18–24.

On February 8, 2019, Defendants separately filed the sealed medical records as an exhibit to the motion for summary judgment. Sealed Document: Exhibit A Medical Records, ECF No. 59 (Feb. 8, 2019) ("Defs.' Ex. A").

On March 7, 2019, Mr. Crowder opposed Defendants' motion for summary judgment. Opposition to Motion for Summary Judgment, ECF No. 62 (Mar. 7, 2019) ("Pl.'s Opp.").

On February 20, 2019, Mr. Crowder again moved for the appointment of counsel. Motion to Appoint Counsel, ECF No. 61 (Feb. 20, 2019).

On March 19, 2019, Mr. Crowder moved for reconsideration of the Court's previous decision denying appointment. Motion for Reconsideration for Counsel, ECF No. 64 (Mar. 19, 2019).

On April 3, 2019 the Court denied Mr. Crowder's motion to appoint counsel without prejudice. "Mr. Crowder has shown himself more than capable of sufficiently presenting his case… filing a detailed response to Defendants' motion for summary judgment." Order Denying

Motion to Appoint Counsel, ECF No. 66 (Apr. 3, 2019). "[A]fter the Court has reviewed the motion for summary judgment . . . . if the Court determines that Mr. Crowder's position 'seems likely to be of substance,' the Court will consider appointing *pro bono* counsel to represent him." *Id.*

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.") (citing *Anderson*, 477 U.S. at 248).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

Where one party is proceeding *pro se*, a court must read his papers liberally and interpret them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

## III.    DISCUSSION

Mr. Crowder argues that Drs. Farinella, Freston, Naqvi, and Ruiz, all members of the Utilization Review Committee, were deliberately indifferent to his medical needs in violation of the Eighth Amendment, when they delayed scheduling consultative examinations. He also argues that Mr. Alvarez was deliberately indifferent to his medical needs, and interfered with his treatment schedule.

Defendants argue that they are entitled to summary judgment because (1) Mr. Crowder did not have a serious medical condition and (2) Mr. Crowder cannot satisfy his burden of showing defendant's subjectively reckless state of mind. Defs.' Br. at 13, 15-16. Defendants further argue they are protected by qualified immunity. *Id*. at 18-23.

The Court will address each of these issues against these Defendants in turn.

### A.    The Claims Against Drs. Farinella, Freston, Naqvi, and Ruiz

"Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Snipes v. DeTella*, 95 F.3d 586, 590–91 (7th Cir. 1996)). Deliberate indifference to a serious medical need becomes an Eighth Amendment violation when an official both knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *See Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin (Hathaway II)*, 99 F.3d 550, 554 (2d Cir. 1996) (citing *Hathaway v. Coughlin (Hathaway I)*, 37 F.3d 63, 66 (2d Cir. 1994)).

Objectively, "the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists." *Id.* (citing *Hathaway I*, 37 F.3d at 66). The Second Circuit has also recognized that "the inability to engage in normal activities" may form the basis for a cognizable claim regarding inadequate medical care. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (double vision and loss of depth perception due to prior head injury may not inevitably entail pain, but can "readily cause a person to fall or walk into objects, and Koehl alleged that he has experienced such occurrences, and has suffered injuries as a consequence," and thus are sufficient to allege objective element of deliberate indifference claim).

"When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (internal quotation marks and citations omitted).

It is the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.* (citations omitted). "For example, the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment." *Id.* (citing *Chance,* 143 F.3d at 702).

Subjectively, "the charged official must act with a sufficiently culpable state of mind," *id.* (citing *Hathaway I*, 37 F.3d at 66), meaning that the charged official must act or fail to act while "actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

### 1. The Objective Test: Serious Medical Need

"[A] serious medical need exists where the failure to treat a prisoner's condition could result in further significant injury or unnecessary and wanton infliction of pain." *See Smith*, 316 F.3d at 187 (citing *Harrison*, 219 F.3d at 132) (internal quotations omitted)).

Mr. Crowder argues that he had a serious medical need and suffered from troubled breathing, chest pain, hip pain, and back pain, all connected to his multiple sclerosis.[7] *See* Pl.'s Opp. at 3 ( describing his pulmonary problems as having a hard time breathing regularly); Pl.'s SDF ¶ 27 (describing experiencing pain when he "sneezes, yawns, or takes a deep breath[.]"). In support of his claim, he has submitted his own affidavit as well as those of other inmates. *See* Pl.'s Opp. at Exhibit C, ECF No. 62.

Mr. Crowder also argues that Dr. Pillai's recommendation that the Utilization Review Committee permit further testing demonstrates the existence of a serious medical need and that the Utilization Review Committee's delay in authorizing medical tests exacerbated his serious medical need. Pl.'s Opp. at 2.

Drs. Farinella, Freston, Naqvi, and Ruiz argue that there is no evidence in the record that any of Mr. Crowder's alleged medical issues could have resulted "in further significant injury or

---

[7]Defendants claim that Mr. Crowder's multiple sclerosis was in remission during the time relevant to this lawsuit. Defs.' SMF ¶ 60; *see also* Defs.' Ex. A at 20-21, 28, 30-32, 35-36, 38. Mr. Crowder describes, (Pl.'s Opp. at 3,). As discussed below, because the claims against all of the Defendants are dismissed, even if Mr. Crowder's multiple sclerosis was not in remission, the Court need not resolve or even address this issue.

unnecessary or wanton infliction of pain." *Chance*, 143 F.3d at 702 (citation omitted). Indeed, they argue that Mr. Crowder "was seen from 2014 until 2017 and did not exhibit symptoms that would support a serious medical need." Defs.' Br. at 13. Moreover, when Mr. Crowder met with both a pulmonologist and a cardiologist, the ensuing "test results did not disclose a medical condition that necessitated additional follow-up." *Id.* at 14. As a result, Mr. Crowder "has not and cannot assert claims of pain or debilitation associated with the [Utilization Review Committee] denials." *Id.*

The Court disagrees.

As a preliminary matter, at the summary judgment stage, Mr. Crowder cannot rely simply on his own statements and the affidavit of other inmates, none of whom are medical professionals, to create a triable issue of fact as to his serious medical need. *See Charter Practices Int'l, LLC v. Robb*, No. 3:12-cv-1768 (RNC), 2017 WL 4366717, *5 (D. Conn. Sept. 30, 2017) (nonmoving party cannot rely on self-serving affidavit alone to create triable issue of fact); *See also Fuller v. Lantz*, 549 F3d.Appx. 18, 20 (2d Cir. 2013) (finding that "lay statements are insufficient to create a genuine dispute of fact as to the propriety of a medical diagnosis"). Thus, while Mr. Crowder describes his breathing condition as having gotten worse and substantiates that claim with an affidavit, *see* Compl. ¶ 40, his self-serving statement about his medical condition must be substantiated by proper medical evidence.

Even if this Court could credit Mr. Crowder's views of his medical condition, his own characterizations of his pain conflict with each other – as well as the underlying legal standard – both asserting that he could "barely do minimal exercise without getting winded at times[,]" Pl.'s Opp. at 3, and that he did not have a shortness of breath nor chest pain while walking on a treadmill "because there [is] nothing strenuous about that." Pl.'s SDF ¶ 27.

More importantly, there is nothing in the record suggesting that Mr. Crowder's condition worsened as a result of the delay in testing of his medical condition. *See Smith*, 316 F.3d at 187 ("The absence of adverse medical effects or demonstrable physical injury is one such factor that may be used to gauge the severity of the medical need at issue."). Mr. Crowder has not alleged severe pain or increased pain over time, except for when he did not receive his medication on time on one occasion. Pl.'s SDF ¶ 72. None of the specialist tests revealed any abnormal or concerning results that would require further testing or consultations. Defs.' SMF ¶¶ 26-29.

But Dr. Pillai did recommend to the Utilization Review Committee that certain tests be undertaken. *Id*. at ¶¶ 4, 12, 17. His recommendations, even if not followed by the Utilization Review Committee, create a genuine issue of material fact as to whether Mr. Crowder had a serious medical need which required further attention in terms of immediate, rather than delayed, testing. *See Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (in determining serious medical need a court may examine factors like "whether a reasonable doctor or patient would find the injury important and worthy of treatment").

Accordingly, his deliberate indifference claim against Drs. Farinella, Freston, Naqvi, and Ruiz will not be dismissed on this basis.

### 2. The Subjective Test: Disregard of Serious Medical Risk

In addition to satisfying the objective test of having a serious medical need, under the subjective test, "the charged official must act with a sufficiently culpable state of mind." *Smith*, 316 F.3d at 185 (citing *Hathaway I*, 37 F.3d at 66). In other words, the charged official must act

or fail to act while "actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

On this point, Mr. Crowder also argues that Dr. Pillai's recommendations of testing earlier suggests that acted or failed to act while "actually aware of a substantial risk that serious inmate harm will result." *Id.*

Drs. Farinella, Freston, Naqvi, and Ruiz argue that they "made a medical determination not to have the plaintiff consult with a pulmonologist or a cardiologist until after watchful monitoring and observation was done." Defs.' Br. at 15. They further argue that: "Although the URC requests, in 2015 and 2016, to see a pulmonologist and cardiologist were denied, during the same time frame the URC approved requests for the plaintiff to see a neurologist for his multiple sclerosis." *Id.* at 16. As a result, "[i]f the neurologist made a recommendation, based on what was observed during the plaintiff's appointments, for the plaintiff to be seen by either a pulmonologist or a cardiologist that would have been considered. No such recommendation was made." *Id.* at 17. In other words, Mr. Crowder does not have a viable constitutional claim, but merely disagrees with the course of treatment recommended by these medical professionals.

The Court agrees.

While Dr. Pillai's recommendation to the Utilization Review Committee is sufficient for purposes of determining whether Mr. Crowder had a serious medical need, this referral, without more, is not sufficient to create a genuine issue of fact as to whether Drs. Farinella, Freston, Naqvi, and Ruiz failed to act while "actually aware of a substantial risk that serious inmate harm will result." *See Salahuddin*, 467 F.3d at 280. Mr. Crowder also would have to raise a genuine issue of fact as to what these doctors did, and why, and that would demonstrate that their action or inaction was without regard to "a substantial risk that serious inmate harm will result." *Id.*

There is, however, nothing in the record to support that claim. In fact, between June 2013 and August 2017, Mr. Crowder received medical attention on numerous occasions. *See* Defs.' SMF ¶¶ 1, 3, 5, 9, 11, 17, 25-28. And, although the requests for referrals to specialists were denied in 2015 and 2016, Mr. Crowder continued to receive treatment and examinations from treating physicians, including chest x-rays, echocardiograms, and inhalers by the medical unit, as well as treatment for his multiple sclerosis from a neurologist. Defs.' SMF ¶¶ 14, 26, 67; *See also* Pl.'s Opp. at 2. Moreover, when they felt appropriate, these same doctors also recommended that the very tests Mr. Crowder wanted be undertaken. Defs.' Br. at 11-12.

In other words, there is nothing in this record to support the notion that these doctors would not order the tests Mr. Crowder wanted. Instead, Mr. Crowder can only argue that these doctors failed to order the tests he wanted, when he wanted them. *See* Defs.' SMF ¶¶ 6-8, 14-16 (noting that the doctors did not believe there was a sufficient medical basis for ordering the further testing at that time). But "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

And Mr. Crowder has provided no objective medical evidence to document any pulmonary or cardiac abnormalities during the two-year period, when he did not have the tests, or that he suffered any ill-effects from the delay. In fact, the record evidence is to the contrary. After the Utilization Review Committee permitted further cardiac testing for Mr. Crowder, the "echocardiogram did not reveal anything abnormal that would warrant further monitoring or an additional consultation." Def's. Br. at 4 (citing Defs.' SMF ¶ 26). After the nuclear stress test was performed, there was "no evidence of myocardial ischemia on myocardial perfusion imaging." *Id.* There also were no "reversible defects identified on stress imaging." *Id.*

After the Utilization Review Committee permitted further pulmonary testing, Mr. Crowder's "lung volumes were normal." *Id.* His diffusion capacity also was "normal." *Id.* The pulmonary "test results did not disclose abnormalities or anything that warranted additional testing or follow up consultations." *Id.*

As a result, Mr. Crowder has failed to create a genuine issue of fact sufficient to warrant a trial on the subjective test on his claim of deliberate indifference against Drs. Farinella, Freston, Ruiz, and Naqvi.

Accordingly, his deliberate indifference claim against Drs. Farinella, Freston, Ruiz, and Naqvi will be dismissed.

**B.     The Claims Against Mr. Alvarez**

**1.  The Objective Test:  Serious Medical Need**

Consistent with the analysis above with respect to Drs. Farinella, Freston, Naqvi, and Ruiz, the Court will assume that Mr. Crowder had a serious medical need.

Accordingly, the Court will not dismiss the deliberate indifference claim against Mr. Alvarez on that basis.

**2.  The Subjective Test:  Disregard of Serious Medical Risk**

As to the subjective part of the deliberate indifference standard, Mr. Crowder alleges that Mr. Alvarez was indifferent to his serious medical needs. He asserts that Mr. Alvarez made "it so that he wouldn't be able to leave to get his [multiple sclerosis] medication until he was almost an hour late" and that Mr. Alvarez prevented him from doing so "numerous times[.]" Compl. ¶ 63; Pl.'s SDF Facts ¶ 66. He also asserts that Mr. Alvarez followed him to the medical unit, questioned him about his medication and condition, and worked with medical staff to change Mr. Crowder's long-established medication schedule. Pl.'s SDF ¶¶ 53-59; 63-66.

Mr. Alvarez argues that he "did not deprive the plaintiff of medical treatment." Def.'s

Br. at 17. He further argues that he "did not talk to medical staff about the plaintiff's condition."

*Id.* He also arguably "never prevented the plaintiff from going to the medical unit." *Id.* In his

view, Mr. Crowder's claim fails as a matter of law.

The Court agrees.

At this stage of the proceedings, it is not enough for Mr. Crowder to allege that Mr.

Alvarez prevented him from receiving needed medical treatment. *See Brown*, 654 F.3d at 358

("Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the

opposing party must come forward with specific evidence demonstrating the existence of a

genuine dispute of material fact.") (first quoting *Celotex Corp v. Catrett*, 477 U.S. 317, 323

(1986); then quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Instead, he

must provide admissible evidence of this denial.

The record evidence lacks this admissible evidence. In his own submissions to the Court,

Mr. Crowder concedes that he "could not leave the gym until the guard let him out after showing

his medical pass." Pl.'s SDF ¶ 63. Mr. Crowder thus could attend medical appointments if he

showed "his medical pass." There is no record evidence to the contrary, either in an affidavit

from Mr. Crowder or other document.

Indeed, as Mr. Alvarez has noted in his submission, "[i]nmates are typically issued a pass

to go the medical unit." Defs.' Br. at 7 (citing Local Rule 56(a) ¶ 55); *see also* Defs.' Br. at

Exhibit B at 6 ("Inmates that are administered drugs on a regular and recurring basis are given a

pass to the medical unit.") (citing affidavit of Dr. Cary Freston); *id.* at Exhibit G ("Inmates are

typically issued a pass to go to the medical unit.") (citing affidavit of Mr. Alvarez). And in his

Local Rule 56(a)(2) statement, Mr. Crowder admitted that he would need a pass to go to the

medical unit. Pl.'s SDF ¶ 63. Thus, unless Mr. Crowder had evidence that he had a pass to go to the medical unit to receive medical treatment and Mr. Alvarez denied this request any way, he has no viable claim against Mr. Alvarez.

There is no such evidence in this record.

Accordingly, Mr. Crowder's deliberate indifference claim against Mr. Alvarez must fail as a matter of law and will be dismissed.[8]

## IV.    CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is

**GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of September, 2019.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

---

[8] Because the claims against all of the Defendants will be dismissed, the Court need not and does not have to consider whether the Defendants are entitled to qualified immunity.